IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ADVANCED DATACOMM TESTING :
 CORP. :

 v. : Civil Action No. DKC 2008-3294

 :

PDIO, INC., et al. :

 :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this breach of contract case is the motion to dismiss or transfer filed by Defendants Precision Communication and Technology, LLC ("Precision") and Perry Gaskins. (Paper 17). The issues are fully briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the reasons that follow, Defendants' motion will be granted and the case will be transferred to the United States District Court for the Eastern District of Virginia.

**I. Background**

Plaintiff Advanced Datacomm Testing Corporation ("ADT") is organized under the laws of Maryland and maintains its principal place of business in Maryland. Defendant Precision is a limited liability company organized under the laws of the Commonwealth of Virginia and maintains its principal place of business in Centreville, Virginia. Defendant Gaskins, president of Precision, is also a citizen of the Commonwealth of Virginia. PDIO, Inc. ("PDIO"), a corporation organized under the laws of the

Commonwealth of Virginia, is a named defendant in this case, as are Reginald Daniels and Debra Daniels, alleged agents of PDIO.[1]

On or about November 3, 2004, PDIO entered into a subcontract with Lockheed Martin Corporation ("Lockheed") to provide technical services for a prime contract that Lockheed had executed with the National Geospatial Intelligence Agency ("NGA").  On November 11, 2004, PDIO retained Plaintiff's services to assist in the performance of Lockheed's subcontract with PDIO ("Subcontract Agreement").

On February 16, 2005, Plaintiff entered into a written contract ("Independent Contracting Agreement") with Precision, in which Precision was to provide engineering systems to Plaintiff in connection with the Lockheed subcontract.  The Independent Contracting Agreement contained a choice of law provision explaining that the contract between Plaintiff and Precision would be governed by Maryland law.[2]  (Paper 1, Ex. B, at 3).  The Agreement terminated on March 13, 2006.  (*Id.*).

Beginning on or about October 2007, Precision and Gaskins allegedly misrepresented to Plaintiff that PDIO's subcontracting agreement with Lockheed was ending and that Precision's engineers

---

[1]   Reginald and his wife Debra are both citizens of the Commonwealth of Virginia.  Debra Daniels is president of PDIO. (Paper 1, at 3).

[2]   Plaintiff appears to allege, incorrectly, that this provision is a forum selection clause, not a choice of law provision.

were beginning to be phased out of the project.  On or about September 2008, PDIO ceased making payments to Plaintiff for network engineering services and allegedly began to circumvent Plaintiff by purchasing Precision's services directly.

On December 8, 2008, Plaintiff filed an eight count complaint against Defendants PDIO, Reginald Daniels, Debra Daniels, Perry Gaskins, and Precision, alleging: (1) breach of the Subcontract Agreement against PDIO; (2) breach of the Independent Contracting Agreement against Precision; (3) tortious interference with contract against PDIO, Reginald Daniels, and Debra Daniels; (4) tortious interference with contract against Precision and Gaskins; (5) tortious interference with economic relations against PDIO, Reginald Daniels, and Debra Daniels; (6) tortious interference with economic relations against Precision and Perry Gaskins; (7) civil conspiracy against Reginald Daniels and Perry Gaskins; and (8) conversion against Reginald Daniels and Debra Daniels.  (Paper 1).

Precision and Gaskins filed a motion to dismiss for lack of personal jurisdiction and improper venue on January 16, 2009. (Paper 17).  Alternatively, Precision and Gaskins move to transfer this action to the United States District Court for the Eastern District of Virginia.

## II.  Personal Jurisdiction

### A. Standard of Review

When a court's power to exercise personal jurisdiction over a nonresident defendant is challenged by a motion under Fed.R.Civ.P. 12(b)(2), "the jurisdictional question is to be resolved by the judge, with the burden on the plaintiff ultimately to prove grounds for jurisdiction by a preponderance of the evidence." *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003)(citing *Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 59-60 (4th Cir. 1993)).  If the existence of jurisdiction turns on disputed facts, the court may resolve the challenge after a separate evidentiary hearing, or may defer ruling pending receipt at trial of evidence relevant to the jurisdictional question. *Combs v. Bakker,* 886 F.2d 673, 676 (4th Cir. 1989).  If the court chooses to rule without conducting an evidentiary hearing, relying solely on the basis of the complaint, affidavits and discovery materials, "the plaintiff need only make a *prima facie* showing of personal jurisdiction." *Carefirst of Md.*, 334 F.3d at 396; *see also Mylan Labs.*, 2 F.3d at 60.  In determining whether the plaintiff has proven a *prima facie* case of personal jurisdiction, the court "must draw all reasonable inferences arising from the proof, and resolve all factual disputes, in the plaintiff's favor." *Mylan Labs,* 2 F.3d at 60; *Carefirst of Md.*, 334 F.3d at 396.

A federal district court may exercise personal jurisdiction over a non-resident defendant "if (1) an applicable state long-arm statute confers jurisdiction and (2) the assertion of that jurisdiction is consistent with constitutional due process." *Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1199 (4th Cir. 1993). Maryland's long-arm statute, Md. Code Ann., Cts. & Jud. Proc. § 6-103 (2008), authorizes the exercise of personal jurisdiction to the limits permitted by the Due Process Clause of the Fourteenth Amendment. *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 710 (4th Cir. 2002), *cert. denied*, 537 U.S. 1105 (2003); *Base Metal Trading, Ltd. v. OJSC "Novokuznetsky Aluminum Factory,"* 283 F.3d 208, 212-13 (4th Cir. 2002), *cert. denied*, 537 U.S. 822 (2002). Thus, the inquiry for the court is whether the defendant purposefully established "minimum contacts" with Maryland such that maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945)(quoting *Milliken v. Meyer,* 311 U.S. 457, 463 (1940)); *see also Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474 (1985); *Base Metal Trading, Ltd.*, 283 F.3d at 213.

The crucial issue is whether the defendant's contacts with the forum state, here Maryland, are substantial enough that it "should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). A defendant has fair warning that it might be subject to a forum's jurisdiction

if it purposefully directs its activities at forum residents and "the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Burger King Corp.,* 471 U.S. at 472 (citing *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 774 (1984); *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 (1984)). Where a nonresident defendant purposefully has engaged in significant activities within the forum state or has created "continuing obligations" with residents of the forum state, the defendant has obtained the benefits and privileges of conducting business there--and thus, "it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well." *Burger King Corp.*, 471 U.S. at 476. With regard to jurisdiction over corporate employees, each defendant employee's "contacts with the forum State must be assessed individually." *Calder v. Jones*, 465 U.S. 783, 790 (1984)(citing *Rush v. Savchuk,* 444 U.S. 320, 332 (1980)).

    **B. Analysis**

    Plaintiff first asserts that this court has personal jurisdiction over Precision and Gaskins because of a forum selection clause contained in the Independent Contracting Agreement. (Paper 1, at 1). The relevant portion of the Independent Contracting Agreement states:

> The laws of the state of Maryland shall
> govern the validity of this Agreement, the
> construction of its terms and the

> interpretation of the rights and duties of the
> parties hereto.

(Paper 17, Ex. B, at 3).  This clause is a choice of law provision
because it provides only the law that governs the interpretation of
the agreement, and does not compel selection of a particular forum.
A choice of law clause does not, by itself, confer jurisdiction.
*See Consulting Engineers Corp. v. Geometric Ltd.*, 561 F.3d 273, 282
n.11 (4th Cir. 2009)("[A] valid forum selection clause, unlike a
choice of law clause, may act as a waiver to objections to personal
jurisdiction."). Moreover, it is unclear whether the choice of law
provision even applies here because the Independent Contracting
Agreement terminated on March 13, 2006, but the allegations giving
rise to this complaint did not arise until October 2007, according
to Plaintiff's complaint.  (Paper 1 ¶ 19).

Alternatively, Plaintiff argues that personal jurisdiction is
proper under both the Maryland long-arm statute and the Due Process
Clause of the Fourteenth Amendment.  The Maryland long-arm statute
provides, in relevant part:

> (b) A court may exercise personal jurisdiction
> over a person, who directly or by an agent:
>
> > (1)  Transacts  any  business  or
> > performs  any  character  of  work  or
> > service in the State;
> >
> > (2) Contracts to supply goods, food,
> > services,  or  manufactured  products
> > in the State;

> (3) Causes tortious injury in the
> State by an act or omission in the
> State; . . .

Md. Code Ann., Cts. & Jud. Proc. § 6-103(b).  Plaintiff argues that Precision and Gasksins' contacts with Maryland satisfy subsections (b)(1), (b)(2), and (b)(3).

### 1.  Subsections (b)(1) and (b)(2)

Plaintiff asserts that Precision, through its president Gaskins, transacted business in Maryland in several ways.  First, Plaintiff contends that Precision sent numerous invoices to Plaintiff's office in Potomac, Maryland, and received checks that Plaintiff sent from Maryland.  Plaintiff also argues that Precision employed Robert Dent, a Maryland resident, to provide services to Plaintiff.  Plaintiff further argues that on at least two occasions, Precision dispatched its employees to NGA's office in Bethesda, Maryland to install software and deliver material.  Plaintiff also points out that Precision is registered to do business in Maryland.

Precision counters that its contacts with Maryland are far too attenuated to confer jurisdiction.  Precision points out that it is a Virginia limited liability company and its principal place of business is in Virginia.  (Paper 17, Ex. 1, Gaskins Aff. ¶¶ 2, 4).  It has no facility in Maryland, owns no property in Maryland, has no bank account in Maryland, and has not solicited customers or clients in Maryland.  (*Id.* ¶¶ 12, 13).  Precision also argues that

8

the two discrete instances when a Precision employee visited Maryland was at NGA's request, and that neither of these isolated instances is sufficient for this court to assert personal jurisdiction over Precision. (*Id.* ¶ 11). Finally, Precision insists that the fact that it is registered to do business in Maryland is wholly insufficient to establish jurisdiction.

Transacting business pursuant to subsection (b)(1) "requires 'actions [that] culminate in purposeful activity within the State.'" *Bahn v. Chicago Motor Club Ins. Co.*, 98 Md.App. 559, 568 (1993); *Prince v. Illien Adoptions Int'l, Ltd.*, 806 F.Supp. 1225, 1228 (D.Md. 1992); *Sleph v. Blake*, 76 Md.App. 418, 427 (1988), *cert. denied*, 314 Md. 193 (1988). Where the contacts involve a contract, "Maryland courts could and would assert jurisdiction over a party to a contract in a suit for breach of that contract if the party has performed 'purposeful acts' in Maryland 'in relation to the contract, albeit preliminary or subsequent to its execution.'" *Du-Al Corp. v. Rudolph Beaver, Inc.*, 540 F.2d 1230, 1232 (4th Cir. 1976)(citing *Novack v. Nat'l Hot Rod Ass'n*, 247 Md. 350, 357 (1967)). Subsection (b)(1) does not require the defendant to have been physically present in Maryland. *See Bahn*, 98 Md.App. at 568 (finding that under this subsection "[t]he defendant need never have been physically present in the state"); *Sleph*, 76 Md.App. at 427 (holding that a "nonresident who has never entered the State . . . may be deemed to have 'transacted business' in the State within

the meaning of subsection (b)(1) as long as his or her actions culminate in 'purposeful activity' within the State.").

The fact that Precision sent numerous invoices to Plaintiff's office in Maryland is not enough for this court to assert personal jurisdiction over Precision. Maryland courts have repeatedly held that contact through mail alone is insufficient to satisfy subsection (b)(1). For example, in *Craig v. Gen. Fin. Corp. of Illinois*, 504 F.Supp. 1033, 1038 (D.Md. 1981), the United States District Court for the District of Maryland declined to exercise personal jurisdiction over an Illinois defendant who sent multiple letters to the plaintiff's employer in order to inform the employer of plaintiff's indebtedness to defendant, even though the plaintiff's cause of action arose from that contact. Rather, the court construed the phrase "transacting business" narrowly, noting that subsection (b)(1) generally requires a defendant to conduct significant negotiations in the forum or intentionally advertise and sell products there. *Id.* Similarly, in *Marriott PLP Corp. v. Tuschman*, 904 F.Supp. 461, 467 (D.Md. 1995), *aff'd*, 97 F.3d 1448 (1996), the court refused to assert personal jurisdiction over a nonresident defendant simply because he mailed subscription payments into Maryland for the limited partnership that later brought suit against him.

Indeed, Maryland courts have asserted jurisdiction over nonresident defendants who have mailed payments and other

10

correspondence into the state only when the defendants also had other purposeful contacts with Maryland, *i.e.*, by conducting significant negotiations with a Maryland corporation or entering into a contract in Maryland. *See Jason Pharm., Inc. v. Jianas Bros. Packaging Co., Inc.*, 94 Md.App. 425, 434 (1993)(asserting personal jurisdiction over nonresident defendant who entered into one sales transaction with a Maryland corporation after conducting "extensive negotiations [with the corporation] over several weeks" and sending a $35,000 down payment into Maryland); *Bahn*, 98 Md.App. at 569-70 (finding personal jurisdiction over an Illinois corporation after it sent notices to the plaintiffs in Maryland, entered into a contract with the plaintiffs in Maryland, and later accepted plaintiffs' payments from Maryland). Here, it is undisputed that the parties signed the contract in Virginia and that the contract was performed at two NGA facilities in Virginia.

Furthermore, the fact that one of Precision's employees is a Maryland resident and Precision employees went to NGA offices in Maryland on two instances is also insufficient to establish personal jurisdiction. The relevant inquiry is not whether this court has personal jurisdiction over Precision's employees who reside in Maryland, but rather whether this court has personal jurisdiction over Precision. Moreover, the Precision employees went to Maryland on those two occasions upon NGA's request.

11

Precision may not be haled into a jurisdiction as a result of attenuated, isolated, contacts. *Geometric Ltd.*, 561 F.3d at 277.

Similarly, the Fourth Circuit has rejected the notion that a corporation's registration in a state is enough to exercise personal jurisdiction over the corporation.

> We think the application to do business and the appointment of an agent for service to fulfill a state law requirement is of no special weight in the present context. *Applying for the privilege of doing business is one thing, but the actual exercise of that privilege is quite another.* *See International Shoe Co. v. Washington, supra*, 326 U.S. at 319, 66 S.Ct. 154. The principles of due process require a firmer foundation than mere compliance with state domestication statutes.

*Ratliff v. Cooper Labs., Inc.*, 444 F.2d 745, 748 (4th Cir. 1971), *cert. denied*, 404 U.S. 948 (1971)(emphasis added). As explained by the *Ratliff* court, the relevant issue is whether Precision actually conducts business in Maryland, not whether it is merely registered to do business in Maryland. Plaintiff has failed to meet its burden that Precision transacts business in the state.

Plaintiff also argues that the court can exercise personal jurisdiction over Precision pursuant to subsection (b)(2) because Precision contracted to supply services to Plaintiff in connection with a contract awarded by NGA to Lockheed. Plaintiff points out that NGA is a federal agency headquartered in Maryland, and that both Lockheed and Plaintiff are Maryland corporations. However, Precision correctly points out that these facts are irrelevant.

The issue is not whether this court has personal jurisdiction over Plaintiff, Lockheed, or NGA, but rather, whether the court has jurisdiction over Precision.

### 2.  Subsection (b)(3)

Plaintiff next asserts that the court can exercise personal jurisdiction over Precision under subsection (b)(3) because Precision tortiously interfered with Plaintiff's contract with PDIO by misappropriating Plaintiff's trade secrets and disclosing them to third parties.  Mohammad Rahimi, Plaintiff's president, points out that the Independent Contracting Agreement provides that "all work product created by Precision in connection with Lockheed's NGA project are the exclusive property of ADT."  (Paper 18, Rahimi Aff., at 4).  The Independent Contracting Agreement also states that "[Precision] shall not retain any copies of [work product] without [Plaintiff's] prior written permission." (Paper 1, Ex. B, Indep. Contracting Agrmt., at 2).  Raffi states that there is a dispute of fact as to whether Precision and Gaskins misappropriated Plaintiff's trade secrets.

Precision counters that any of its network/system engineering services which could be classified as "work product" is the property of the United States government and is classified information.  Precision contends that it is unaware of any trade secrets Plaintiff has, that Plaintiff never provided Precision with any trade secrets, and that it has no knowledge of Plaintiff's

13

business information and processes.  Precision also points out that no employee of Plaintiff has the security clearance required to access the work Precision and its employees performed for NGA. Thus, Precision insists that Plaintiff cannot allege that Precision misappropriated trade secrets because Plaintiff did not even have the clearance required to access these alleged trade secrets.

In *ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617 (4th Cir. 1997), *cert. denied*, 523 U.S. 1048 (1998), the facts of which are similar to this case, the Fourth Circuit rejected the notion that a state can exercise personal jurisdiction over a defendant simply because the plaintiff experiences injury in the forum state based on the defendant's actions.  In that case, a South Carolina manufacturer sued a New Hampshire company and numerous non-South Carolina residents in South Carolina asserting that the defendants had conspired to misappropriate plaintiff's trade secrets and customer lists.  The Fourth Circuit held that jurisdiction in South Carolina was improper, noting:

> The ESAB Group contends, however, that, wherever the sales were made by Centricut, and thus lost by the ESAB Group, they were ultimately felt in South Carolina at the ESAB Group's headquarters.  While this is undoubtedly true, when unaccompanied by other contacts, it is ultimately too unfocused to justify personal jurisdiction.  *See Indianapolis Colts* [*v. Metro. Baltimore Football Club Ltd. P'ship*, 34 F.3d 410,] 412 [(7th Cir. 1994)](noting that in cases upholding jurisdiction based on injury in the forum state to intellectual property or reputation, "[t]he defendant had also

14

'entered' the state in some fashion"). Instead of grounding jurisdiction on a defendant's decision to "purposely avail [ ] itself of the privilege of conducting activities within the forum state," [*Ry. Employees v.*] *Hanson*, 351 U.S. [225, 253](1956)*, or on a defendant's activities "expressly aimed" at the forum state, *Calder*, 465 U.S. at 789, 104 S.Ct. at 1487, jurisdiction would depend on a plaintiff's decision about where to establish residence. Such a theory would always make jurisdiction appropriate in a plaintiff's home state, for the plaintiff always feels the impact of the harm there.   Although the place that the plaintiff feels the alleged injury is plainly relevant to the inquiry, it must ultimately be accompanied by the defendant's own contacts with the state if jurisdiction over the defendant is to be upheld.

*Id*. at 625-26.  Precision's contacts are similar to those found to be insufficient to confer personal jurisdiction in *Esab Group*.  The contract was executed and performed in Virginia, and Precision does not conduct business nor have property in Maryland.  The fact that Plaintiff has suffered the effects of Defendant's alleged conduct in Maryland, without more, is insufficient to establish personal jurisdiction.  Here, "there is nothing other than an (alleged) interference with contract, where one of the contracting parties happens to be a Maryland resident."  *Ritz Camera Ctrs. Inc. v. Wentling Camera Shops Inc.*, 982 F.Supp. 350, 355 (D.Md. 1997).  The only connection Maryland has with this case is that it is the location of Plaintiff's injury, which is insufficient to exercise personal jurisdiction over Precision.

### 3.  Due Process

For the same reasons, Precision's contacts do not satisfy the due process prong of personal jurisdiction.  The Due Process analysis depends on "whether the defendant's contacts with the forum state provide the basis for the suit." *See Mitrano v. Hawes*, 377 F.3d 402, 406-07 (4th Cir. 2004)(citing *Carefirst of Md.,* 334 F.3d at 397).  There are two categories of minimum contacts necessary for personal jurisdiction: general and specific.  *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 438 (1952).  In order for a court to exercise general jurisdiction, Defendants' contacts must be "continuous and systematic."  *Helicopteros Nacionales de Colombia,* 466 U.S. at 416.  First, Plaintiff asserts that the court has general jurisdiction over Precision because it registered itself as a foreign limited liability company with the Maryland Department of Assessments and Taxation and designated a Maryland registered agent to accept service on its behalf.  (Paper 19, at 8).  As previously explained, "the application to do business and the appointment of an agent for service to fulfill a state law requirement is of no special weight in the present context." *Ratliff*, 444 F.2d at 748; *Consolidated Dev. Corp. v. Sherritt*, *Inc.*, 216 F.3d 1286, 1293 (11th Cir. 2000)(holding the lower court could not assert jurisdiction over a foreign corporation based on appointment of an agent).  Plaintiff also contends that the court has general jurisdiction over Precision because Precision is doing

business in Maryland through the SeaPort Rolling Admissions Prime Contract ("SeaPort Contract").[3]  (Paper 18, Rahimi Aff., at 3-4). Yet, no work has been awarded to Precision under the SeaPort Contract and Precision has not entered into any subcontracts with Maryland corporations in connection with the SeaPort Contract. (Paper 20, at 12).  In sum, these facts do not support a finding that Precision's contacts with the forum state are "continuous and systematic" and thus, there is no basis for exercising general jurisdiction over Precision.

Specific jurisdiction requires that the relevant conduct has such a connection with the forum state that it is fair for the defendant to defend itself in that state.  To determine whether the exercise of specific jurisdiction comports with due process, a court considers: (1) the extent to which the defendant has purposefully availed itself of the privilege of conducting activities in the forum state; (2) whether the plaintiff's claims arise out of those activities directed at the state; and (3) whether the exercise of personal jurisdiction would be constitutionally "reasonable."  *See, e.g., Carefirst of Md.*, 334 F.3d at 397.  "A defendant has purposely availed itself of the privilege of conducting activities in the forum state if the defendant has created a 'substantial connection' to the forum."

---

[3]  It does appear that Precision applied to be considered for work in Maryland under the Seaport Rolling Admissions Prime Contract.  (Paper 20, Ex. A, at 4, 22).

*Johansson Corp. v. Bowness Constr. Co.*, 304 F.Supp.2d 701, 704 (D.Md. 2004)(citing *Ellicott Mach. Corp., Inc. v. John Holland Party Ltd.*, 995 F.2d 474, 477 (4th Cir. 1993)).

Applying these principles, Precision's connection with Maryland is far too tenuous to confer personal jurisdiction. Precision is a Virginia corporation, the contract between the parties was executed in Virginia, all of the work that Precision provided to Plaintiff was performed in Virginia, Precision has never solicited clients or customers in Maryland, and Precision has never signed any contracts in Maryland.  As previously explained, the fact that Precision sent invoices to Plaintiff's office in Maryland and dispatched employees to Maryland on two occasions is insufficient to demonstrate that Precision could reasonably expect to be haled into court in Maryland.  "The fundamental question to be answered in deciding the constitutional issue is whether it can be said that [the defendant] 'purposefully avail[ed] itself of the privilege of conducting activities within' Maryland." *Joseph M. Coleman & Assocs., LTD. v. Colonial Metals*, 887 F.Supp 116, 119 (D.Md. 1995)(quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). Precision has not purposefully availed itself of conducting activities in Maryland, has not created a substantial connection to Maryland, and could not have reasonably anticipated litigating in the state.

Similarly, Plaintiff has not met its burden of showing that the court can exercise personal jurisdiction over Gaskins, Plaintiff's president, under either the Maryland long-arm statute or the Due Process clause. All of the claims that Plaintiff asserts against Gaskins were in his capacity as the president of Precision. However, as explained, this court cannot exercise personal jurisdiction over Precision. Therefore, this court does not have personal jurisdiction over Gaskins. Gaskins states that he is a resident of Virginia, owns no property in Maryland, and has not conducted any business in Maryland. (Paper 17, Ex. 1, Gaskins Aff. ¶¶ 1, 14). Plaintiff has not presented evidence that Gaskins purposefully established "minimum contacts" with Maryland such that maintenance of the suit would not offend notions of fair play and substantial justice.

## III. Venue and Transfer

Although this court lacks personal jurisdiction over Defendants Precision and Gaskins, the remaining Defendants in this action, PDIO, Regina Daniels, and Debra Daniels, concede that this court has personal jurisdiction over them and that venue is proper. (Paper 10, ¶¶ 3,4). Where venue is appropriate for some defendants but not others, as here, "the district court has wide discretion." 14D Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice & Procedure § 3827 (3$^{d}$ ed. 2007). The court may transfer the entire case, pursuant to 28 U.S.C. § 1406(a), to another forum

that would be proper for all Defendants.[4]  *See In re Carefirst of Md., Inc.*, 305 F.3d 253, 255-56 (4th Cir. 2002)(Section 1406(a) "interpreted to authorize transfers in cases where venue is proper but personal jurisdiction is lacking or some other impediment exists that would prevent the action from going forward in that district").  Alternatively, the court may dismiss Defendants Precision and Gaskins from the action and retain the case as to the remaining Defendants.  Wright & Miller § 3827.  The district court has the sound discretion to elect either option.  *See Robbins v. Ytopian Enter., Inc.*, 202 F.Supp.2d 426, 431 (D.Md. 2002).  The court has authority to transfer under § 1406(a) even if it lacks personal jurisdiction over the defendants.  *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466-67 (1962).

First, Precision and Gaskins argue that should the court determine that it lacks personal jurisdiction over them, as it has here, the action should be dismissed because venue is not proper in this court.  Precision and Gaskins further contend that if this case is not dismissed, it should be transferred to the United States District Court for the Eastern District of Virginia.

---

[4]     Section 1406(a) provides:

> The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.

Plaintiff requests that the claims not be dismissed, but that the action be transferred to the Eastern District of Virginia, Alexandria Division.  The remaining Defendants have not stated any position concerning transfer.  The local rules of the Eastern District of Virginia appear to set the Alexandria Division as the appropriate venue.  *See* United States District Court for the Eastern District of Virginia, Local Rule 3(B) (updated May 12, 2009).

Pursuant to § 1406, it is appropriate to transfer the case to the Eastern District of Virginia.  The contract was executed in Virginia, Precision and Gaskins performed the contract at NGA facilities in Virginia, and the majority of witnesses are in Virginia.  Moreover, because this court lacks personal jurisdiction over Precision and Gaskins, enabling Plaintiff to litigate her action against all Defendants in the same court will promote the interests of justice.[5]

---

[5] Although not applicable in this case, transfer would also be appropriate under 28 U.S.C. 1404(a), which provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

## IV.  Conclusion

For the foregoing reasons, Precision and Gaskins' motion to dismiss or transfer will be granted.  A separate Order will follow.


_____/s/_____
DEBORAH K. CHASANOW
United States District Judge